## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |  |
|---|---|---|
| RICHARD L. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Action No. 2:15cv533 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Richard L. Parker's ("Plaintiff") Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Disability Income ("SSDI") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment and memorandum in support, ECF No. 30-31, and the Commissioner filed a cross-Motion for Summary Judgment and memorandum in support, ECF Nos. 34-35, which are now ready for recommended disposition.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil

Procedure 78(b) and Local Civil Rule 7(J).   For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 30, be **GRANTED** to the extent it seeks reversal and remand of the Commissioner's decision, the Commissioner's Motion for Summary Judgment, ECF No. 34, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

On or about August 19, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of March 16, 2008,[1] due to diabetes, arthritis, irritable bowel syndrome ("IBS"), gout, depression, and attention deficit disorder ("ADD").  R. at 205, 247, 250.  Plaintiff's claim was denied at the initial and reconsideration levels.  R. at 71-83. Subsequently, Plaintiff filed a request for a hearing before an Administrative Law Judge and that hearing was held on March 27, 2013.  R. at 102, 137-138.  Administrative Law Judge Irving A. Pianin ("ALJ") issued a decision on April 17, 2013, and found that Plaintiff was not entitled to disability benefits.  R. 99-116.  Plaintiff requested review by the Appeals Council, and the Appeals Council issued a Notice of Order remanding the case to the ALJ on May 10, 2014.  R. at 117, 182.  Following a rehearing on July 16, 2014, the ALJ issued a decision on August 27, 2014, again finding that Plaintiff was not entitled to disability benefits.  R. at 11-24.  Plaintiff again requested review by the Appeals Council and on September 30, 2015, the Appeals Council issued a Notice of Appeals Council Action, which denied Plaintiff's appeal.  R. at 1-5, 10.

On September 30, 2015, the Appeals Council mailed Plaintiff a date-stamped letter informing him of the denial.  R. at 1-5.  The Appeals Council also sent a copy of its letter to Plaintiff's legal counsel, Mr. John H. Klein.  ECF No. 11, attach. 2.  The letter informed Plaintiff that he had sixty-five days to file a civil action in the United States District Court and instructed

---

[1] Plaintiff's onset date of disability was later amended to November 1, 2010.  *See* R. at 16.

Plaintiff how to request an extension of time should he require one.[2] R. at 2-3. Plaintiff filed his Complaint on December 7, 2015, later than the presumptive sixty-five days to which Plaintiff was entitled.[3] ECF No. 1. Subsequently, the Commissioner filed a Motion to Dismiss for Lack of Jurisdiction on the basis that Plaintiff Complaint was untimely. ECF No. 4. On February 14, 2017, this Court granted the Commissioner's Motion and dismissed Plaintiff's Complaint as untimely. ECF No. 19; *see* ECF No. 16.

Plaintiff then appealed to the Fourth Circuit Court of Appeals. ECF No. 21. While Plaintiff's appeal was pending, Plaintiff sought a request for extension of time from the Appeals Council, requesting a retroactive extension of time to file a civil action in the United States District Court. *See* R. at 504. On September 11, 2018, the Appeals Council granted Plaintiff's request, permitting retroactively an extension of time through December 7, 2015, thereby curing Plaintiff's untimely filing. R. at 504-05. Plaintiff then sought voluntary dismissal of his appeal to the Fourth Circuit, and on September 19, 2018, the Fourth Circuit dismissed Plaintiff's appeal with instructions that the case be remanded to the District Court for further proceedings. ECF No. 26.

On November 1, 2018, Plaintiff filed a Motion for Summary Judgment and memorandum in support. ECF Nos. 30-31. On December 3, 2018, the Commissioner filed a cross-Motion for Summary Judgment and memorandum in support. ECF Nos. 34-35. Thereafter, Plaintiff filed a reply brief on December 17, 2018. ECF No. 37. The cross-Motions for Summary Judgment and related briefing were referred to the undersigned on December 20, 2018. As such, this matter is now ripe for recommended disposition on the merits.

---

[2] The letter indicated Plaintiff had sixty days to file a civil action, but that receipt of the letter was presumed to be five days after the date of the letter, effectively giving Plaintiff sixty-five days to file such an action. R. at 2.
[3] Sixty days following the presumptive five days delivery from September 30, 2015, expired on December 4, 2015.

3

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on December 3, 1950, and was fifty-seven years old at the time of his alleged onset date of disability of March 16, 2008. *See* R. at 71.  On July 16, 2014, Plaintiff appeared, represented by John Klein, and testified before the ALJ at the administrative hearing. R. at 51, 56-65.  An impartial vocational expert ("VE"), Edith Edwards, also appeared and testified.  R. at 51, 66-69.  The record included the following factual background for the ALJ to review:

### 1. Relevant Physical and Mental Health Treatment Records

On November 10, 2010, Plaintiff saw Melissa Pence, Psy.D., for a neuropsychological assessment to address complaints of memory problems, following referral by Dr. Herbert Knight, Plaintiff's primary care physician. R. at 463-67.  Plaintiff stated he had not previously been seen for mental health treatment and presented with specific complaints of forgetfulness, memory loss, depression, getting lost while driving, change in function, and irresponsible behavior.  R. at 463.  Dr. Pence noted on mental status examination that Plaintiff had a depressed mood, was appropriate dressed, well groomed, that his attitude and behavior were attentive and cooperative, and that rapport was easily established and maintained.  R. at 464.  Upon testing, Plaintiff had impaired memory, but had an intact memory for delayed recall and recognition.  R. at 466. Plaintiff presented inconsistent responses to items on the personality test, leading to invalidated results. R. at 467.  Dr. Pence opined that Plaintiff appeared to have clinically significant anxiety and depression, which likely influence his functioning, and that there were subtle indications on examination of an organic cognitive problem, including poor planning, impaired copying, and diminished visual memory.  R. at 467.  Dr. Pence diagnosed Plaintiff was mild cognitive impairment, severe anxiety, and mild to moderate depression. R. at 467.

4

Plaintiff first indicated complaints of IBS to Dr. Knight in December 2010 and in March 2011.  R. at 402-05.  On examination, Dr. Knight found Plaintiff's abdomen was soft with normal bowels.  R. at 404.

In January 2011, Plaintiff began seeing Dr. Charles Parker, D.O., psychiatrist.  R. at 339. On initial evaluation, Plaintiff presented as depressed and anxious but had a neat and casual appearance, cooperative attitude, logical thoughts, average intellect, adequate memory, adequate impulse control, adequate judgment, and no suicidal thoughts.  R. at 340-41.  Plaintiff also saw Dr. Parker in February 2011, which revealed a similar mental status examination.  R. at 444-47.

On August 30, 2012, Dr. Knight completed a form regarding Plaintiff's diabetes and indicated Plaintiff suffered from episodes of confusion or disorientation, depression, and anxiety. R. at 449-51.

On November 28, 2012, Dr. Parker again saw Plaintiff and indicated Plaintiff suffered from severe depression, ADHD, and executive functioning challenges.  R. at 454.  Dr. Parker stated Plaintiff had depressive symptoms of pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, retardation, decreased energy, and difficulty concentrating or thinking.  R. at 454.  Dr. Parker assessed marked limitations in activities of daily living based on low energy and depression; extreme limitations in social functioning; and extreme limitations in maintaining concentration, persistence, or pace.  R. at 455, 458.  Dr. Parker indicated Plaintiff's disorder lasted two years, despite use of medication and/or psychosocial support and caused more than a minimal limitation in ability to do basic activities.  R. at 456.  Dr. Parker found Plaintiff had repeated episodes of decompensation and he would be absent from work more than two days a month.  R. at 456, 459.  Dr. Parker indicated Plaintiff had symptoms of generalized persistent anxiety and in the past experienced recurrent

5

severe panic attacks at least once a week.  R. at 457.  Dr. Parker opined Plaintiff had no substantial ability to perform basic work relative activities on a sustained basis (eight hours a day five days a week).  R. at 460.

In December 2012, Plaintiff saw gastroenterologist Michael Sperling, M.D., following a referral by Dr. Knight.  R. at 484-86.  Plaintiff reported having four loose bowel movements a day for the past year, often at night, and Dr. Sperling characterized Plaintiff's diarrhea as being not well controlled.  R. at 484.  On examination, Dr. Sperling observed that Plaintiff was in no acute distress, appeared well-nourished, his abdomen was non-tender with no palpable masses, and normal bowel sounds.  R. at 485.  Dr. Sperling recommended Plaintiff take Cholestyramine and undergo laboratory and diagnostic testing.  R. at 486.

On March 6, 2013, Dr. Parker indicated his opinion remained the same as that of his November 28, 2012 assessment.  R. at 482.

A May 14, 2014 treatment note of Dr. Parker indicated Plaintiff had been put on Zoloft in September 2013, and that Zoloft was only minimally helpful.  R. at 502.  Plaintiff told Dr. Parker his symptoms were worsening.  R. at 502.

On June 12, 2014, Dr. Parker completed a mental residual functional capacity assessment and determined Plaintiff was markedly limited in two of three categories of understanding and memory, and moderately limited in the third category.  R. at 496.  Regarding sustained concentration and persistence, Dr. Parker found Plaintiff moderately limited in three categories and markedly limited in four categories.  R. at 496.  Plaintiff was markedly limited in sustained concentration and persistence.  R. at 497.  Regarding social interaction, Plaintiff was not significantly limited in one category, moderately limited in three categories, and markedly limited in one category.  R. at 497.  Regarding adaptation, Dr. Parker considered Plaintiff to be

moderately limited in three of the four categories and markedly limited in the fourth.  R. at 497.

Plaintiff reported moderate to severe social anxiety complicated by his short temper.  R. at 497.

Plaintiff also indicated difficulties in concentration, and that his medications were helping but

had not reached therapeutic effect.  R. at 497.  Plaintiff further reported difficulty remembering

instructions, leading to frustration in carrying them out and difficulty in social interactions.  R. at

498.  Dr. Parker opined Plaintiff did not, at that time, appear fit for employment.  R. at 498.

### 2. Consultative Examinations

On November 14, 2011, Plaintiff attended a consultative evaluation with Valeria

Ammons-King, M.D., at the request of the state agency.  R. at 426-431.  Plaintiff reported he had

GI upset several hours every day after eating breakfast and stated he would be in the restroom for

more than two hours after eating.  R. at 426.  Plaintiff reported having hypertension, panic

disorder, and depression.  R. at 427.  Plaintiff indicated he was only taking medication for

diabetes and Tylenol Extra-Strength, but that his psychiatrist wanted to restart other medications.

R. at 426-27.  On examination, Plaintiff's abdomen was soft and nontender, and he had no

guarding.  R. at 427.  Plaintiff was neurologically intact.  R. at 428.  Dr. Ammons-King opined

Plaintiff could sit for eight hours and walk for six hours in an eight-hour workday without

assistance; he could carry less than twenty pounds; and he would have some limitations in

crouching, bending, or stooping.  R. at 428.

On November 18, 2011, Plaintiff attended a psychological evaluation with psychologist

Kathleen Dring, Psy.D., at the request of the state agency.  R. at 432-37.  Plaintiff indicated that

he drove himself to the examination and that he was unable to work because of stomach

problems and depression with panic attacks "once in a while."  R. at 432.  Plaintiff stated that ten

months earlier Dr. Parker prescribed him Vyvanse for ADHD, but that he did not take the

7

medication because it made him more depressed and tired.  R. at 433.  On examination, Plaintiff

had a normal appearance with good grooming and hygiene.  R. at 434.  Plaintiff had a depressed

mood but was friendly, pleasant, and cooperative.  R. at 434.  Plaintiff had a coherent and logical

thought process, estimated average intelligence, and adequate insight.  R. at 434.  Plaintiff's

immediate recall was intact, he had below-average abstract reasoning, and his general fund of

information was average.  R. at 434.  Dr. Dring assessed depressive disorder and post-traumatic

stress disorder, and gave Plaintiff a global assessment of functioning ("GAF") score of 50-55.  R.

at 434.  Regarding Plaintiff's mental impairments, Dr. Dring opined Plaintiff would have minor

to moderate difficulties dealing with usual work stressors encountered in the competitive

workplace but could perform repetitive tasks, maintain regular attendance, accept instructions

from supervisors, and interact with co-workers and the public.  R. at 435.  Dr. Dring noted IBS

could interfere with Plaintiff's ability to work.  R. at 435.

### 3. State Agency Review

On December 14, 2011, David Deaver, Ph.D., a state agency psychologist, reviewed

Plaintiff's records.  R. at 71-83.  Dr. Deaver opined that Plaintiff had mild restrictions of

activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties

maintaining concentration, pace, and persistence; and no episodes of decompensation of

extended duration.  R. at 76.  Dr. Deaver opined that Plaintiff had no significant limitations

performing simple tasks, interacting with others, or responding appropriately to changes in the

work setting.  R. at 79-81.

On December 14, 2011, Josephine Cader, M.D., a state agency physician, reviewed

Plaintiff's records.  R. at 71-83.  In considering the opinion of Dr. Ammons-King, Dr. Cader

found Dr. Ammons-King's opinion to overestimate the severity of Plaintiff's limitations.  R. at

81.  In considering the opinion of Dr. Ding, Dr. Cader noted the discussion of IBS was outside Dr. Dring's specialty.  R. at 78, 82.  After a review of the record, Dr. Cader opined that Plaintiff could lift up to fifty pounds occasionally and twenty-five pounds frequently, could stand or walk about six hours in an eight-hour workday, and could sit about six hours in an eight-hour workday.  R. at 78.  Dr. Cader determined Plaintiff has no postural or other non-exertional limitations.  R. at 78-79.

On April 4, 2012, Carolina Bacani-Longa, M.D., a state agency physician, reviewed Plaintiff's record.  R. at 85-97.  Dr. Bacani-Longa opined Plaintiff's physical impairments were non-severe.  R. at 90.

On April 4, 2012, Daniel Walters, Psy.D., a state agency psychologist, reviewed Plaintiff's record and agreed with Dr. Deaver's earlier assessment of Plaintiff.  R. at 93-95.

**4. Relevant Hearing Testimony**

At the March 27, 2013 ALJ hearing, Plaintiff testified that he lived with his wife and 6-year-old great-granddaughter.  R. at 30.  Plaintiff stated he last worked in 2008 and had stopped working because his work was stressful, and he could not cope being around a lot of people.  R. at 31-32.  Plaintiff stated that in that job he was a supervisor in the aviation business and supervised about ten people.  R. at 32-33.  Plaintiff testified that before that job he worked in sales, as a golf course helper, and for a tank inspection company.  R. at 33-34.  Plaintiff stated he would not be able to perform his supervisor job, the sales job, or the golf course job because of his back, knees, and anxiety around people.  R. at 34.  Plaintiff testified he had social anxiety and would get nervous if around more than three or four people and may have anxiety or panic attacks sometimes.  R. at 35.  Plaintiff testified he had taken some anxiety medication but stopped taking it because of the way it made him feel.  R. at 35.  Plaintiff stated he could lift and

carry only ten pounds due to pain in his shoulders and back. R. at 38. Plaintiff stated he could

sit for about thirty to forty-five minutes before his shoulders started to bother him. R. at 38.

Plaintiff stated he could stand about fifteen minutes and walk about a block and a half. R. at 38.

Plaintiff testified that he did not drive much, did not do household chores or housework, would

help his wife fold laundry, would cook from time to time, would load and unload the dishwasher

occasionally, would go grocery shopping with his wife, would not vacuum, and would

occasionally sweep. R. at 39-40. Plaintiff stated he does not exercise except walking around the

house and does not really socialize but did like playing poker on the computer. R. at 40.

Plaintiff testified in his sales position he was not required to lift or carry anything heavy and did

not have to lift or carry anything in his position as a golf course helper. R. at 41. Plaintiff

testified that Dr. Knight treated him for IBS, but that none of the medications had really been

effective. R. at 42. Plaintiff testified that since 2010 he is in the bathroom about five to six

times on a good day and about eight to ten times on a bad day for fifteen to twenty minutes,

requiring him to stay close to home. R. at 42-43. Plaintiff testified he gets tired and needs to lay

down about four hours a day. R. at 42-43. Plaintiff testified that he was having difficulty by

getting lost and forgetting things and that these memory problems have been fairly consistent

since November of 2010. R. at 43-44.

 At the July 16, 2014 ALJ hearing, Plaintiff testified that his medical condition had not

really changed since the prior hearing, except that he is more depressed and had been

experiencing panic attacks daily, which last about an hour, since September of 2013. R. at 56,

58. Plaintiff stated he started taking medication (Zoloft) for his mental health starting in

September 2013, but that medication has not helped. R. at 57, 59-60. Plaintiff testified that

when he has panic attacks he stops what he is doing and goes to a quiet place. R. at 58. Plaintiff

testified that he sees Dr. Parker more often because of his medication.  R. at 61.  Plaintiff testified that he drives once in a while, and that starting in September or October of 2013, Plaintiff largely stopped doing laundry, cooking, dishes, sweeping, and food shopping.  R. at 61. Plaintiff stated that he still goes on the computer to play poker once in a while.  R. at 62. Plaintiff testified he has problems getting lost when he drives, causing Plaintiff to panic.  R. at 62-63.  Plaintiff testified he used to play golf but had not played for about three years largely due to his shoulders, knees, and stomach problems.  R. at 63.  Plaintiff testified that he uses the bathroom six or seven times a day and will have to go right away, typically with no warning.  R. at 65.

Also at the July 16, 2014 ALJ hearing, the VE testified that Plaintiff's past work as a golf course helper was medium, unskilled; his work as a retail sales clerk was light, semi-skilled; and his work as an aviation supervisor was medium, skilled.  R. at 66.  At the hearing, the VE was presented with two hypotheticals.  The first hypothetical presented asked the VE to consider a hypothetical individual with Plaintiff's age, education, and work experience who can perform work at all exertional levels but that does not involve any climbing or exposure to heights or hazards; that does not involve more than occasional contact with coworkers, supervisors, or the general public; that is limited to performing simple, routine, repetitive tasks; and that is within close proximity to a restroom.  R. at 66.  The VE testified such an individual could not perform any of Plaintiff's past work.  R. at 66-67.  The VE further testified that there would be other medium, unskilled work available, such as an inserter or a sorter.  R. at 67.  The VE testified that, adding to the first hypothetical panic attacks that would require the individual to remove himself to another room for one hour, no work would be available.  R. at 67.  The VE testified that, accounting for Dr. Parker's opinion that Plaintiff is markedly limited in a number of areas,

such limitations would preclude the sustaining of work.  R. at 68.  The VE testified that her testimony was consistent with the Dictionary of Occupational Titles.  R. at 69.

### III.  THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits.  20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record.  *Id.*  The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-00357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity).  "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability.  Affirmative answers to questions three or five establish disability."  *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, that Plaintiff last met the insured status requirement on June 30, 2013. R. at 16. Second, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of November 1, 2010 through his date last insured ("DLI") of June 30, 2013. R. at 16. Third, the ALJ determined that through the DLI Plaintiff suffered from the following severe impairments: mood disorder, post traumatic stress disorder, diabetes mellitus, and IBS. R. at 17. The aforementioned impairments were found to be severe as they caused more than minimal limitations in the Plaintiff's ability to perform basic work activities. R. at 17. To the extent that Plaintiff alleged knee/shin pain, the ALJ determined this condition was nonsevere as it did not require Plaintiff to participate in significant treatment. R. at 17. To the extent that Plaintiff alleged cognitive disorder, the ALJ determined this condition was nonsevere as Dr. Melissa Pence[4] described it as mild. R. at 17.

With respect to Plaintiff's physical impairments, the ALJ considered whether Plaintiff met the listings under section 5.00, and determined Plaintiff did not as Plaintiff failed to show a disorder of the digestive system, together with documentation regarding the effects of treatment, including evidence as to the prescribed dosage, responses to treatment, adverse effects, and the expected duration of treatment. R. at 17.

Regarding Plaintiff's mental impairments, the ALJ determined that such impairments singly and in combination did not meet or medically equal the criteria of listings 12.04 and 12.06. R. at 17. The ALJ found "paragraph B" criteria were not satisfied because Plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties regarding concentration, persistence, or pace; and no episodes of

---

[4] The ALJ makes reference to Dr. Melissa Penee or Penne throughout his decision, but based on the records before the Court, it appears clear that the ALJ intended to identify Dr. Melissa Pence. *See* R. at 17, 19-20, 463-67.

decompensation. R. at 17-18.  ALJ reasoned that because Plaintiff's mental impairments do not

cause at least two marked limitations or one marked limitation with repeated episodes of

decompensation, each of an extended duration, the "paragraph B" criteria were not satisfied. R.

at 18.

Fourth, the ALJ determined that, through the DLI, Plaintiff had the RFC to perform a full

range of work at all exertional levels with non-exertional limitations to include: no climbing or

exposure to heights or hazards; only occasional contact with coworkers, supervisors, and/or the

general public due to limitations in social functioning; only simple routine, repetitive tasks due to

limitations in concentration, persistence, or pace; and work within close proximity to a restroom

due to IBS. R. at 18.

While the ALJ determined that Plaintiff's medically determinable impairments could

reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that

"[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible." R. at 19.

The ALJ noted there were de minimus records of mental health treatment as Plaintiff

testified he visited with Dr. Parker "only several times" in 2014 and that Dr. Pence's November

2010 neuropsychological assessment of Plaintiff revealed an intact memory for delayed recall

and recognition with only mild deficiency in ability to think flexibly, average complex visual

motor tracking, and average intellectual functioning.  R. at 19-20.  The ALJ noted limited

records in 2011, consistent with generally unremarkable findings. R. at 20.  The ALJ further

noted Dr. Parker's records of February 2012, which described Plaintiff as calm with spontaneous

speech and with a neat and casual appearance. R. at 20. The ALJ identified records in March

2012 that showed Plaintiff was not taking any medications, and records in December 2012 that

showed Plaintiff complained of anxiety, change in sleep pattern, depression, inability to concentrate, panic attacks, and no suicidal ideation. R. at 20. The ALJ determined that Plaintiff's statements of deterioration in September or October 2013 had little support in the record and Plaintiff admitted to infrequent mental health treatment in 2014. R. at 20. Plaintiff reported to Dr. Parker in June 2014 that he had good compliance with treatment, good tolerance of treatment, and fair symptom control, and Dr. Dring's findings were consistent with these insignificant records. R. at 20. The ALJ reported Dr. Dring diagnosed Plaintiff with post-traumatic stress disorder, resulting in significant distress, and mood disorder but that Plaintiff's mental status examination was generally unremarkable. R. at 20. The ALJ accorded the report of Dr. Dring great weight as it was consistent with the testimony, progress notes, and course of treatment. R. at 21.

Regarding Plaintiff's IBS, Plaintiff testified he used the restroom six to seven times a day and told Dr. Ammons-King in November 2011 that he used the restroom for more than two hours after eating. R. at 21. The ALJ noted there were very limited treatment records regarding Plaintiff's IBS. R. at 21. In January and September 2012, Plaintiff denied weight change, and in December 2012, Plaintiff denied symptoms of abdominal pain, weight loss, rectal bleeding, fecal urgency, pain with defecation, tenemus, incontinence of stool, steatorrhea, and constipation. R. at 21. The ALJ noted that Plaintiff's claims of disability were not supported by the physical examination of Dr. Ammons-King, who made generally unremarkable findings and concluded Plaintiff was able to lift less than twenty pounds several times throughout the day and noted Plaintiff only used Tylenol Extra Strength for pain relief. R. at 21. The ALJ accorded the November 2011 findings of Dr. Ammons-King great weight. R. at 21.

The ALJ noted that Dr. Parker opined in February 2012, and restated in March 2013, that Plaintiff had no energy to function, resulting in marked limitations in activities of daily living; experienced repeated episodes of decompensation; and would be absent more than two days a month. R. at 21. The ALJ observed that Dr. Parker's opinions were inconsistent with Plaintiff's admissions that he visited Dr. Parker infrequently and had never been psychiatrically hospitalized. R. at 21. The ALJ further observed Plaintiff's admissions to be inconsistent with Dr. Parker's June 2014 treatment note indicating Plaintiff had "good compliance with treatment, good tolerance of treatment, and fair symptom control." R. at 21. The ALJ accorded little weight to the opinion of Dr. Parker. R. at 22. The ALJ further accorded significant weight to the August 2012 opinion of Dr. Knight as being consistent with Plaintiff's unremarkable physical findings in the record, and accorded moderate weight to the December 2011 findings of the state agency medical consultant's determination that Plaintiff could perform work in a restricted medium residual functional capacity, as the objective and subjective findings, together with the course of treatment and testimony, supported a finding that Plaintiff did not suffer exertional limitations. R. at 22.

Fifth, the ALJ determined that Plaintiff was unable to perform his past relevant work based on the VE's testimony. R. at 22-23.

Finally, the ALJ found that, through Plaintiff's DLI, considering Plaintiff's age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that Plaintiff could have performed, including positions as an inserter or sorter. R. at 23.

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff makes five major claims: 1) The ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence and pace, pursuant to *Mascio v. Colvin*; 2) the ALJ failed to consider the June 2014 opinion of Dr. Parker and assign weight to the same, pursuant to *Meyers v. Califano*, because even though it was issued following Plaintiff's DLI, it is relevant to Plaintiff's pre-DLI condition; 3) the ALJ improperly discredited the opinion of Dr. Parker; 4) the

ALJ's RFC is not supported by substantial evidence because, even though the ALJ gave "great weight" to consultative examiners Dr. Dring and Dr. Ammons-King, the ALJ failed to apply their opinions in the RFC; and 5) the ALJ improperly rejected Plaintiff's testimony regarding his need for frequent bathroom breaks due to his IBS. ECF No. 31 at 3.

**A. The ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace, pursuant to *Mascio v. Colvin***

Plaintiff contends that the ALJ's RFC failed to account for Plaintiff's limitations in social functioning, concentration, persistence, and pace by limiting Plaintiff only to work consisting of simple, routine, repetitive tasks. ECF No. 31 at 12. The Court agrees.[5]

In *Mascio*, the Fourth Circuit joined other circuits in holding that merely presenting a hypothetical limiting a claimant to simple, routine tasks or unskilled work, without more, will not account for moderate limitations in concentration, persistence, or pace. 780 F.3d 632, 638 (4th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The rationale underlying this conclusion is well-founded: "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* at 638. *Mascio* requires more than general limitations, such as simple or unskilled work, be included when accounting for limitations in concentration, persistence, and pace by addressing *how* a plaintiff could stay on task. *Id.* Consequently, the *Mascio* court explicitly held that a limitation to simple, routine tasks and unskilled work does not adequately account for limitations in concentration, persistence, or pace. *Id.* ("[A]n ALJ does not account for a

---

[5] The Court notes that the ALJ's decision was rendered pre-*Mascio*, however, this does not prevent the Court from considering *Mascio* on judicial review. *See, e.g.*, *Baez v. Colvin*, Action No. 2:14-cv-628, 2015 U.S. Dist. LEXIS 173888 (E.D. Va. Dec. 7, 2015).

claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.").

In the instant case, the ALJ's RFC limited Plaintiff to "only simple routine, repetitive tasks due to limitations in concentration, persistence, or pace." R. at 18. In determining that Plaintiff has moderate limitations in concentration, persistence, or pace, the ALJ relies on Plaintiff's own statements that he does not handle stress or changes in routine well, that he does not finish what he starts, and has difficulty following written and spoken instructions. R. at 18. However, the ALJ failed to explain how limiting Plaintiff to performing simple, routine, repetitive tasks would overcome Plaintiff's deficiency in persistence and pace, such that he would be able to finish what he starts. In other words, the ALJ failed to identify how performing only simple, routine, repetitive tasks would allow Plaintiff to stay on task. The ALJ's failure to account for the same or explain his failure to reflect such limitations in the RFC clearly runs afoul of *Mascio*.[6] Therefore, the Court **FINDS** the ALJ failed to explain away or account for Plaintiff's moderate limitation in concentration, persistence, or pace in the RFC and further **FINDS** remand is necessary to address the same. *See Mascio*, 780 F.3d at 638.

**B. The ALJ failed to consider the June 12, 2014 assessment of Dr. Parker but, to the extent the ALJ erred, such error is harmless.**

Plaintiff argues the ALJ erred by failing to discuss, consider, or evaluate the June 12, 2014 opinion evidence of Dr. Parker as the ALJ is required to consider all relevant and probative

---

[6] Responsively, the Commissioner contends that the ALJ's RFC was proper as it accounted for Plaintiff's limitations in social functioning, concentration, persistence, and pace by limiting him to simple, routine, and repetitive tasks with limited interactions with others. ECF No. 35 at 17. The Court agrees that the ALJ properly limited Plaintiff's interactions with others as a means of accounting for Plaintiff's limitations in social functioning. *See* R. at 18. The Commissioner further argues that because the ALJ did not simply limit Plaintiff to "unskilled" work, as was the case in *Mascio*, that the ALJ's RFC was sufficiently specific and recognized that Plaintiff did not have the concentration, persistence, or pace to complete detailed or complex tasks and did not have the ability to keep up with constantly changing tasks. ECF No. 35 at 18. However, the Commissioner's view of *Mascio* appears overly-restrictive as an ALJ's RFC may still be deficient even if the ALJ provides additional limitations above and beyond unskilled work if those limitations do not account for the claimant's ability to stay on task, as is the case here.

evidence, and comment on such evidence, so a reviewing court will know the ALJ gave it proper consideration.  ECF No. 31 at 14-15 (citing *Meyers v. Califano*, 661 F.2d 980, 983 (4th Cir. 1979)).  Responsively, the Commissioner contends that Dr. Parker's June 2014 opinion is duplicative of his earlier November 2012 and March 2013 opinions and, as such, the ALJ did not need to make any specific finding as to this opinion.  ECF No. 35 at 21.  The Commissioner further argues that the ALJ did not need to consider the June 2014 opinion because it was rendered after Plaintiff's DLI.  *Id.* at 21-22.

Looking at the evidence of record, the June 12, 2014 assessment of Dr. Parker does not appear to be duplicative of Dr. Parker's earlier November 2012 and March 2013 findings.  Rather, the June 12, 2014 assessment appears actually to evidence *less* impairment than his November 2012 assessment.

On November 28, 2012, Dr. Parker assessed marked limitations in activities of daily living based on low energy and depression; extreme limitations in social functioning; and extreme limitations in maintaining concentration, persistence or pace.  R. at 455, 458.  Dr. Parker found Plaintiff had repeated episodes of decompensation and would be absent from work more than two days a month.  R. at 456, 459.  Dr. Parker indicated Plaintiff had symptoms of generalized persistent anxiety and in the past experienced recurrent severe panic attacks at least once a week.  R. at 457.  Dr. Parker opined Plaintiff had no substantial ability to perform any of the fourteen basic work-related activities on a sustained basis (eight hours a day five days a week).  R. at 460.  On March 6, 2013, Dr. Parker indicated his opinion remained the same as that of his November 28, 2012 assessment.  R. at 482.

On June 12, 2014, Dr. Parker found Plaintiff markedly limited in two of three categories of understanding and memory, and moderately limited in the third category.  R. at 496.

20

Regarding sustained concentration and persistence, Dr. Parker found Plaintiff moderately limited in three categories and markedly limited in four categories. R. at 496. Plaintiff was markedly limited in sustained concentration and persistence. R. at 497. Regarding social interaction, Plaintiff was not significantly limited in one category, was moderately limited in three categories, and was markedly limited in one category. R. at 497. Regarding adaptation, Dr. Parker considered Plaintiff to be moderately limited in three of the four categories and markedly limited in the fourth. R. at 497. Dr. Parker opined Plaintiff did not, at that time, appear fit for employment. R. at 498.

A comparison of these two records reveals them as distinct. In November 2012, Dr. Parker indicated Plaintiff could not understand and remember very short and simple instructions, R. at 460, however in June 2014, Dr. Parker indicated Plaintiff was only moderately limited in his ability to understand and remember very short and simple instructions, R. at 496. In November 2012, Dr. Parker indicated Plaintiff could not carry out very short and simple instructions, R. at 460, but in June 2014 he indicated Plaintiff was only moderately limited in this ability, R. at 496. In November 2012, Plaintiff could not maintain regular attendance and be punctual within customary tolerances, R. at 460, but in June 2014, Plaintiff was only moderately limited in the same, R. at 496. In November 2012, Plaintiff could not ask simple questions or request assistance, R. at 460, but Plaintiff was not significantly limited in this area in June of 2014, R. at 496. While the Court shall not belabor the point by comparing every single difference, a review of these documents indicates that the June 2014 assessment is not duplicative of the November 2012 assessment because it shows Plaintiff as having generally fewer or less severe limitations. As such, the Commissioner's first argument that the ALJ need not review the June 2014 assessment due to its duplicative nature rings false. ECF No. 35 at 21.

Regarding the Commissioner's second argument, simply because an opinion is rendered after a claimant's DLI does not automatically bar it from consideration, as it may be relevant to prove disability arising before the claimant's DLI. *Woodridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987). To the extent post-DLI evidence has sufficient linkage to conditions alleged to have occurred prior to the DLI, the ALJ is required to consider it. *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 342 (4th Cir. 2012) (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969) and finding that a letter submitted by plaintiff's wife to the Appeals Council post-DLI was sufficiently linked because it discussed plaintiff's condition from years before). While the June 2014 assessment addresses Plaintiff's mental limitations, Dr. Parker's assessment does not specify if his assessment is meant to cover any period before or after June 2014. As such, there does not appear to be the same kind of linking-back that is clearly demonstrated in *Bird* such that the ALJ would have been required to consider Dr. Parker's post-DLI assessment. However, even if the ALJ did err, such an error would be harmless due to the fact that Dr. Parker's June 12, 2014 assessment appears less restrictive than that of November 28, 2012, as reaffirmed on March 6, 2013.[7] As such, the Court **FINDS** that the ALJ did not err in failing to consider Dr. Parker's June 12, 2014 assessment, but even if such error had occurred, the Court **FINDS** any such error would be harmless.

## C. The ALJ did not err in according "little weight" to Dr. Parker

Under the "treating physician rule," the opinion of a claimant's treating physician should be given controlling weight and may be disregarded "only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature

---

[7] In light of the fact that the undersigned recommends remand on Plaintiff's first claim under *Mascio*, the ALJ may be best served by specifically considering the June 12, 2014 assessment of Dr. Parker on remand.

22

and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). If any of the evidence is inconsistent, the ALJ must decide which evidence should receive controlling weight. 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). The regulations do not require that an ALJ accept opinions from a treating physician in every situation, for example, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. *Jarrells v. Barnhart*, No. 7:04–CV–411, 2005 U.S. Dist. LEXIS 7459, at *9-10 (W.D. Va. Apr. 26, 2005). The ALJ must articulate the reasons for the weight given to the treating source's medical opinions, 20 C.F.R. § 404.1527(d)(2), and specific supporting evidence must be cited so that a reviewing court can discern the basis for the decision, *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 519 (D. Md. 2002); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Pursuant to 20 C.F.R. § 404.1527(c), unless a treating physician's medical opinion is afforded controlling weight, the ALJ must consider the following non-exhaustive factors in deciding the weight given to any medical opinion, including whether: (1) The physician has examined the claimant; (2) the physician has treated the claimant, and the nature, extent, and length of the treatment relationship; (3) the medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings; (4) the opinion is consistent with the record as a whole; (5) the treating physician is a specialist in the field of which he is opining; and (6) other factors. *Id.* § 404.1527(c)(1)-(6). The ALJ is also required to articulate the reasons for the weight given to a treating source's medical opinions. *Id.* § 404.1527(d)(2).

23

Plaintiff contends that the ALJ erred by according little weight to the opinions of Dr. Parker. ECF No. 31 at 16. The Court disagrees, as the ALJ discussed at length the highly restrictive opinions of Dr. Parker and specifically articulated that his opinions appear inconsistent with his own treatment notes and the other evidence of record.

Specifically, the ALJ indicated that Dr. Parker's own treatment notes of June 2014 demonstrating Plaintiff had good compliance with treatment, good tolerance of treatment, and fair symptom control were inconsistent with Dr. Parker's opinion of November 2011 that Plaintiff essentially had work-preclusive limitations as he was unable to perform any of the fourteen basic work-related activities on a sustained basis (8 hours a day 5 days a week). R. at 21. The ALJ also noted Dr. Parker's sparse treatment record and Plaintiff's corroborative testimony that Plaintiff saw Dr. Parker infrequently and had never been psychiatrically hospitalized. R. at 21. The ALJ determined that such infrequent psychiatric care was inconsistent with the significant and restrictive psychiatric limitations opined by Dr. Parker. R. at 21. The ALJ also noted Dr. Dring's examination of Plaintiff in December 2011 in which she diagnosed post-traumatic stress disorder and mood disorder but found Plaintiff's mental status examination to be generally unremarkable, which appears in stark contrast to the conclusions of Dr. Parker. R. at 20.

The ALJ specifically identified and provided reasons for those areas of concern and ultimately determined that discounting Dr. Parker's opinion evidence was warranted, thus complying with his obligations pursuant to 20 C.F.R. § 404.1527(d)(2). Therefore, the Court **FINDS** that the ALJ's decision to accord little weight to the opinion of Dr. Parker is supported by substantial evidence.

**D. The ALJ properly incorporated Dr. Dring's opinion in the RFC, however, the Court is unable to conduct meaningful review to determine if the ALJ's RFC is supported by substantial evidence as the ALJ did not incorporate into the RFC the opinion of Dr. Ammons-King or adequately explain his failure to do so**

Plaintiff contends that the ALJ's RFC is unsupported by substantial evidence as it fails to account for the opinions of Dr. Dring and Dr. Ammons-King, both of whom were afforded "great weight."[8]   ECF No. 31 at 17-18.   Notably, Plaintiff makes this argument absent any authority to stand for the proposition that the ALJ is required to incorporate all opinions afforded great weight into the RFC.

The ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels with non-exertional limitations to include: no climbing or exposure to heights or hazards; only occasional contact with coworkers, supervisors, and/or the general public due to limitations in social functioning; only simple routine, repetitive tasks due to limitations in concentration, persistence, or pace; and work within close proximity to a restroom due to IBS. R. at 18.

Such an RFC is consistent with the opinion of Dr. Dring, who opined Plaintiff would have minor to moderate difficulties dealing with usual work stressors encountered in the competitive workplace but could perform repetitive tasks, maintain regular attendance, accept instructions from supervisors, and interact with co-workers and the public. R. at 435. The ALJ's RFC appears to adopt Dr. Dring's opinion that Plaintiff could perform repetitive tasks and appears to limit Plaintiff's exposure to work stressors by limiting Plaintiff to only occasional contact with others. R. at 18. As such, it does not appear that the ALJ failed to adopt into the RFC the opinion of Dr. Dring to whom the ALJ gave "great weight."

---

[8] Plaintiff indicates that Dr. Ammons-King's opinion was accorded "moderate weight," ECF No. 31 at 18, but the ALJ's decision specifically states he accorded the November 2011 findings of Dr. Ammons-King "great weight." R. at 21.

The ALJ also afforded the opinion of Dr. Ammons-King great weight. R. at 21. Dr. Ammons-King opined Plaintiff could sit for eight hours and walk for six hours in an eight-hour workday without assistance; he could carry less than twenty pounds; and he would have some limitations in crouching, bending, or stooping. R. at 428. Specifically, Plaintiff contends that Dr. Ammons-King assigned limitations that prevented Plaintiff from performing work that was not considered light. ECF No. 31 at 17. Pursuant to 20 C.F.R. § 404.1567, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[9] The ALJ specifically credited Dr. Ammons-King's opinion regarding Plaintiff's exertional limitations that Plaintiff is "able to lift less than twenty pounds several times throughout the day." R. at 21. Despite this, the ALJ's RFC indicates Plaintiff can work at all exertional levels. R. at 18. While the ALJ did consider other medical opinions addressing Plaintiff's exertional limitations,[10] the ALJ failed to explain how Dr. Ammons-King's opinion that Plaintiff could lift less than twenty pounds squared with his conclusion that Plaintiff could perform work at all exertional levels. The ALJ indicated that the "objective and subjective findings, together with the course of treatment and testimony, supports a finding that claimant does not suffer any exertional limitations" but fails to reconcile this conclusion with the great weight he afforded to Dr. Ammons-King's opinion.

Absent sufficient explanation for failing to incorporate the exertional opinion of Dr. Ammons-King into the RFC or explain his failure to do so, the Court cannot conduct meaningful review of the ALJ's decision as to Plaintiff's exertional limitations. *See Boston v. Colvin*, 4:14-

---

[9] Notably, Dr. Ammons-King's opinion does not squarely fit within the definition of light exertional level, however, this is of no significant consequence to the Court's analysis.
[10] Dr. Cader, who the ALJ accorded moderate weight, R. at 22, opined Plaintiff could perform medium work, R. at 78-79. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. The ALJ specifically discounted Dr. Cader's opinion that Plaintiff was restricted to medium work. R. at 22 (finding the "objective and subjective findings, together with the course of treatment and testimony, supports a finding that claimant does not suffer any exertional limitations.").

26

CV-206, 2016 U.S. Dist. LEXIS 21874, at *20-23 (E.D.N.C. Feb. 2, 2016) (finding meaningful review impossible where the ALJ failed to incorporate limitations in the RFC opined by a physician who was afforded "great weight" absent adequate explanation).

As such the Court **FINDS** the ALJ did not err with respect to Dr. Dring's opinion, as the ALJ adequately accounted for her opinions in the RFC.  However, the Court further **FINDS** the ALJ erred by failing to adequately explain his decision to afford Dr. Ammons-King "great weight" while at the same time providing an RFC that fails to incorporate the exertional limitations upon which she opined.

**E. The ALJ did not err in rejecting Plaintiff's testimony regarding his need for frequent bathroom breaks due to IBS**

Plaintiff contends that the ALJ erred by discounting Plaintiff's credible testimony about his need for frequent bathroom breaks due to IBS.  ECF No. 31 at 18.

The ALJ's RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments based on a claimant's credible complaints. *Woodson v. Berryhill*, Civil No. 3:17cv347, 2018 U.S. Dist. LEXIS 167396, at *48 (E.D. Va. Aug. 7, 2018).  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis by first examining the objective medical evidence to determine if claimant's medically determinable impairments could reasonably produce the symptoms alleged and then, if step one is satisfied, the ALJ then evaluates the claimant's statements about the intensity and persistence of the pain and the extent to which it affects the claimant's ability to work. *Craig*, 76 F.3d at 592-94; *Woodson*, 2018 U.S. Dist. LEXIS 167396, at *49.  Notably, a claimant's own description of his impairments and symptoms standing alone is insufficient to establish disability.  20 C.F.R. §§ 404.1529(a), 416.929(a).  However, where the ALJ makes a negative credibility determination, he should refer specifically to the evidence that informs the ALJ's

conclusion. *Hammond v. Hecker*, 765 F.2d 424, 426 (4th Cir. 1985). Further, the Court must accept the ALJ's findings and credibility determination unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Woodson*, 2018 U.S. Dist. LEXIS 167396, at *49-50 (quoting *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

In the instant case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff but found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 19. Specific to Plaintiff's statements regarding IBS, the ALJ noted that Plaintiff testified he used the restroom six to seven times a day and told Dr. Ammons-King in November 2011 that he used the restroom for more than two hours after eating. R. at 21. The ALJ noted there were very limited treatment records regarding Plaintiff's IBS. R. at 21. In January and September 2012, Plaintiff denied weight change, and in December 2012, Plaintiff denied symptoms of abdominal pain, weight loss, rectal bleeding, fecal urgency, pain with defecation, tenemus, incontinence of stool, steatorrhea, and constipation. R. at 21.

As the ALJ aptly notes, very few treatment records discuss Plaintiff's IBS. The record reflects that Plaintiff first complained of IBS to Dr. Knight in December 2010, and on examination, Plaintiff's abdomen was soft with normal bowels. R. at 404. November 14, 2011, Plaintiff told Dr. Ammons-King that he had GI upset several hours every day after eating breakfast and stated he would be in the restroom for more than two hours after eating. R. at 426. On examination, Dr. Ammons-King noted Plaintiff's abdomen was soft and nontender, and he had no guarding. R. at 427. In December 2012, Plaintiff saw Dr. Sperling and reported he had four loose bowel movements a day for the past year, often at night, and Dr. Sperling

characterized Plaintiff's diarrhea as being not well controlled. R. at 484. On examination, Dr. Sperling observed that Plaintiff was in no acute distress, appeared well-nourished, his abdomen was non-tender with no palpable masses, and he had normal bowel sounds. R. at 485. The sparse nature of the record regarding IBS in addition to the fairly normal examination findings supports the ALJ's conclusion that Plaintiff's statements regarding the intensity of his IBS symptoms is not credible. Apart from Plaintiff's own statements regarding the intensity of his IBS symptoms, Plaintiff received very little treatment for his IBS and indicated that what little treatment he did receive was mostly ineffective. R. at 42.

Plaintiff contends that the ALJ failed to consider the full report of Dr. Sperling and argues that the ALJ ignored essential parts of Dr. Sperling's report that support the degree of Plaintiff's IBS symptoms. ECF No. 31 at 18. However, while the ALJ did not specifically note that Dr. Sperling characterized Plaintiff's diarrhea as "not well controlled," R. at 484, the ALJ accounts for this by requiring Plaintiff work within close proximity to a restroom. R. at 18. Further, the fact that Dr. Sperling determined Plaintiff's diarrhea to be not well controlled does not necessarily support Plaintiff's claims about the number of times he needs to use the restroom in a day or how long he spends using it, but rather speaks to the immediacy within which Plaintiff needs to attend to the restroom when such a need arises. Additionally, Dr. Sperling noted symptoms of four loose bowel movements, occasionally nocturnal, R. at 484, which does not wholly support Plaintiff's stated need to use the restroom six to seven times a day, nor does it speak to Plaintiff's statements to Dr. Ammons-King regarding the duration of such restroom visits. R. at 426.

As such, the Court **FINDS** that, based on the record before the ALJ, the ALJ's decision to discount Plaintiff's testimony regarding the disruptive nature of Plaintiff's IBS symptoms, and

specifically the number of times Plaintiff would be required to use the restroom, is supported by substantial evidence.

## VI. CONCLUSION

In his Motion for Summary Judgment, ECF No. 30, Plaintiff raises five claims and the Court has addressed each in turn, as summarized below:

First, Plaintiff argues the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence and pace, pursuant to *Mascio v. Colvin*. Regarding this claim, the Court **FINDS** the ALJ failed to explain away or account for Plaintiff's moderate limitation in concentration, persistence, or pace in the RFC and further **FINDS** remand is necessary to address the same.

Second, Plaintiff argues that the ALJ failed to consider the June 2014 opinion of Dr. Parker and assign weight to the same, pursuant to *Meyers v. Califano*, because even though it was issued following Plaintiff's DLI, it is relevant to Plaintiff's pre-DLI condition. Regarding this argument, the Court **FINDS** that the ALJ did not err in failing to consider Dr. Parker's June 12, 2014 assessment, but even if such error had occurred, the Court **FINDS** any such error is harmless.

Third, Plaintiff argues the ALJ improperly discredited the opinion of Dr. Parker. Related to this argument, the Court **FINDS** that the ALJ's decision to accord little weight to the opinion of Dr. Parker is supported by substantial evidence.

Fourth, Plaintiff argues the ALJ's RFC is not supported by substantial evidence because, even though the ALJ gave "great weight" to consultative examiners Dr. Dring and Dr. Ammons-King, the ALJ failed to apply their opinions in the RFC. Regarding Plaintiff's argument as to Dr. Dring, the Court **FINDS** the ALJ did not err with respect to Dr. Dring's opinion, as the ALJ

adequately accounted for her opinions in the RFC. Regarding Plaintiff's argument as to Dr. Ammons-King, the Court further **FINDS** the ALJ erred by failing to adequately explain why he did not incorporate into the RFC the exertional limitations opined by Dr. Ammons-King after according her opinion "great weight."

Lastly, Plaintiff argues the ALJ improperly rejected Plaintiff's testimony regarding his need for frequent bathroom breaks due to his IBS. Regarding this argument, the Court **FINDS** that, based on the record before the ALJ, the ALJ's decision to discount Plaintiff's testimony about his need for frequent bathroom breaks is supported by substantial evidence.

## VII. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Commissioner's Motion for Summary Judgment, ECF No. 34, be **DENIED**, Plaintiff's Motion for Summary Judgment, ECF No. 30, be **GRANTED** to the extent it seeks reversal and remand of the Commissioner's decision, and the Commissioner's decision be **VACATED** and **REMANDED**.

## VIII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

     2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

     The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 28, 2019